## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| C-FUELS, LLC V. PUMA ENERGY CARIBE LLC, | |
| Plaintiff, | CIV. NO. 19-2057 (MDM) |
| v. | |
| PUMA ENERGY CARIBE LLC, | |
| Defendant. | |

## OPINION AND ORDER

Pending before the Court is Plaintiff C-Fuels LLC's ("plaintiff" or "C-Fuels") Motion to Compel Discovery. (Docket No. 47). Defendant Puma Energy Caribe LLC's ("Puma" or "defendant") vigorously opposed the motion. (Docket No. 54). C-Fuels replied (Docket No. 59) and Puma then filed a sur-reply (Docket No. 66). For the following reasons, C-Fuels' Motion to Compel Discovery at Docket No. 47 is **GRANTED in part and DENIED in part.**

I.    Procedural and Factual Background

On November 8, 2019, C-Fuels filed the present diversity action against Puma alleging two causes of action: (1) breach of contract through an "illegal scheme to circumvent the pricing provisions" of the parties' several franchise agreements, and (2) breach of the Insurance Coverage Program included in those franchise agreements. (Docket No. 1). Pursuant to the franchise agreements, C-Fuels buys and resells Puma's petroleum products and operates service stations under the Puma trademark. Additionally, Puma sells fuel to C-Fuels at different prices depending on the grade of the fuel (that is whether it is regular, unleaded, premium unleaded gasoline or diesel fuel). The franchise agreements establish that C-Fuels is required to buy fuel from PUMA at a specified price, namely, the "Lowest Rack Price," plus an additional charge, or "differential," which varies according to the grade of the fuel sold. According to C-Fuels, "PUMA has sold and continues to sell fuel to C-Fuels using as [a] base a price which is

higher than PUMA's true Lowest Rack Price," overcharging them "millions of dollars." *Id*. at 8.

On January 1, 2020, Puma filed a Motion to Dismiss, which the Court **Granted in part and Denied in part**. (*See*, Docket No. 33). Relevant here, in its Opinion and Order, the Court found "that any claims arising from the alleged breach of the Terminated Franchise Agreements terminated by 2013 are time barred." *Id*. at 6. The Court thus **DISMISSED with prejudice** all "claims stemming from alleged breach of the franchise agreements for Terminated Service Stations #1, #199, #919, and #920." The Court also found that to the extent that plaintiff's allegations hint at a continuing damages theory, such "doctrine does not apply here." *Id*. at 7. Moreover, in discussing the efficacy of the pleadings and defendants' argument in favor of dismissing the remaining breach of contract claims as time-barred, the Court noted that "[t]he complaint [. . .] is devoid of factual allegations which would allow this Court to ascertain the dates when Puma purportedly breached the contractual provisions, impeding a ruling regarding the timeliness of the [remaining] breach of contract claims at this stage." *Id*. at 8.[1] The Court, nevertheless, noted that "[i]f, as the case develops through discovery, defendant finds facts that support the statute-of-limitations defense, it may raise that defense at an appropriate time, such as in a motion for summary judgment." The Court noted, however, that any claims based on allegations of breaches of the franchise agreement that occurred *before* the Commerce Code's five-year statute of limitations are time barred and plaintiff cannot seek relief on those grounds. *Id*. at 10.

Finally, in the Opinion and Order, when discussing plaintiff's second claim, the alleged breach of the "Insurance Coverage Program," the Court found that "[p]er plaintiff's own allegations, Puma's obligation was to obtain insurance coverage, which it did." *Id*. The Court also wrote that: "Plaintiff does not set forth any additional claims against Puma which shows entitlement to relief on these grounds. As such, dismissal of

---

[1] The surviving breach of contract claims, are related to those which the plaintiff refers to as the "Current Service Stations." (Docket No. 1 at 2-3). More specifically: (i) Service Station #7, located at De Diego Ave., State Road 21, Reparto Metropolitano, San Juan, PR; (ii) Service Station #23, located at State Road 2 Km. 184.3, Mayagüez, PR; (iii) Service Station #43, located at the corner of Esmeralda and Lopategui Avenues, Guaynabo, PR; (iv) Service Station #73, located at State Road 3, Km. 43.5, Fajardo, PR; and (v) Service Station #139, located at State Road 2, Km. 18.3 Bayamón, PR. *Id*.

---

this claim is proper for failure to state a claim."[2] Accordingly, it should be clear by now that any discovery request by the plaintiff related to this second cause of action, if any is still outstanding or being challenged, is clearly outside the scope of discovery and plaintiff cannot pursue it.

    II.    <u>Standard of Review</u>

    Rule 26(b) allows a very broad range of discovery: "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, the information being sought must not be duplicative or burdensome, but it "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(2). The term "relevant information" within Rule 26 "includes any matter that is or may become an issue in the litigation." *Whittingham v. Amherst College,* 164 F.R.D. 124, 127 (D. Mass. 1995).

    "It is well settled that: [t]he party resisting production bears the burden of establishing lack of relevancy or undue burden . . . [T]he "mere statement by a party that the interrogatory . . . was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *Aponte–Navedo, et al. v. Nalco Chemical Co., et al.,* 268 F.R.D. 31, 36–38 (D.P.R. 2010) "On the contrary, the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Aponte–Navedo, id.* (*quoting Sánchez–Medina v. UNICCO Serv. Co.,* 265 F.R.D. 24, 27 (D.P.R. 2009)). Rule 33(b)(4) also states that: "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Rule 34(b)(2)(C) further provides that: "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

---

[2] In its Opinion and Order, the Court clearly held that: "[i]n its motion to dismiss, Puma submits documentary evidence which evidences compliance with Section 12.1 of the franchise agreements. Plaintiff's claim that Puma failed to provide proper coverage since "it never compensated C-Fuels for the damages caused by the hurricanes" misses the mark. (Docket No. 33 at 11-12).

_____

Furthermore, pursuant to Rule 26(b)(5), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). Under the specificity requirement, "the objecting party must be specific enough in its objections to support its privilege, but not too specific so as to divulge privileged information." *Rivera v. Kmart Corp.,* 190 F.R.D. 298, 300 (D.P.R. 2000).

III.   <u>Discussion</u>

According to C-Fuels, Puma has failed to comply with its discovery obligations by not properly answering several of its discovery requests. More specifically, C-Fuels complains that Puma's answers to various interrogatories and requests for production of documents are insufficient and in order for C-Fuels to prove its breach of contract claim, Puma must be compelled to respond fully to them and provide the specific information and documents requested. According to the parties, they have made reasonable and good-faith efforts to reach an agreement on the matters set forth in the motion but have reached an impasse in the discovery discussions. (*See,* Local Rule 26(b); *see also* Fed. R. Civ. P. 37). The Court is thus called upon to resolve the present discovery dispute and, in turn, discusses each of the challenged written discovery requests.

a.   **First Set of Interrogatories**

C-Fuels maintains that Puma has failed to comply with the discovery requests related to several interrogatories, namely, interrogatories nos. 8, 9, 11, 13, 16, 18, 19, and 20. On one hand, C-Fuels argues that these interrogatories were not properly answered by Puma and asks the Court to compel Puma to answer them appropriately. On the other hand, Puma maintains its objections to these discovery requests by arguing, in essence, that they are overly broad, vague, irrelevant, unduly burdensome and/or request confidential and proprietary information. The Court addresses each of C-Fuels' interrogatories and Puma's objections *seriatim*.

1.   <u>*Interrogatory No. 8*</u>

This interrogatory reads as follows: Identify all underlying cost structure components and pricing components offered by Puma to wholesalers in Puerto Rico. Puma objects to this interrogatory as irrelevant, claiming that C-Fuels' complaint alleges

_____

only breach of already expired Franchise Agreements for Puma branded retailers and
C-Fuels has made no allegation pertaining to the price that Puma sells fuel products to
its *wholesalers*. While that may be true, the issue appears to be more complex and, in
view of the parties' diametrically opposed positions on the discovery of information
concerning Puma's wholesale operations, the Court takes the time to make the following
findings.

      To start, the Franchise Agreements at issue provide that C-Fuels is required to
buy fuel (regular, unleaded, premium unleaded or diesel) from Puma at a specified price,
the "Lowest Rack Price," plus an additional charge or differential. More specifically, the
pricing formula has two components: (1) a base price, which is termed "Lowest Rack
Price," and (2) the premium charged on top of that base price (which fluctuates between
8, 9, or 10 cents, depending on the type of fuel product). The combination of those two
elements comprises the price that Puma agreed to sell fuel products to C-Fuels as a
retailer/franchisee pursuant to the Franchise Agreements. The illegal scheme alleged by
C-Fuels is that Puma has sold and continues to sell it fuel using a base price that is
allegedly higher than Puma's true "Lowest Rack Price."

      Moving on, according to C-Fuels, the Franchise Agreements at issue have fully
incorporated Puma's *wholesale* rack prices, i.e., the price that Puma sells to wholesalers
"at its rack," as part of its pricing terms. C-Fuels thus equates "Lowest Rack Price" to
wholesale rack price and thus maintains that the *wholesale* prices offered by Puma "at
its rack" to other wholesalers (as opposed to retailers) are relevant and discoverable. If
they are not, and C-Fuels cannot gain access to Puma's rack sales, then C-Fuels claims
it would be unable to corroborate whether Puma honored its pricing terms. C-Fuels also
maintains that its main claim (and the only one still remaining—the breach of contract
claim) focuses on the specific pricing terms agreed to between itself and Puma,
irrespective of the prices offered by Puma to other retailers or franchisees in Puerto Rico.

      By contrast, Puma avers that despite the terminology used in the Franchise
Agreements and the inclusion of the term "Lowest Rack Price," Puma has never used a
cost structure or variables to calculate a "Lowest Rack Price." Puma argues that because
it does not actually use a "Lowest Rack Price" cost structure, despite the nomenclature
used in the Franchise Agreements, such terminology should be deemed irrelevant. Puma

_____

also claims that the "Lowest Rack Price" has nothing to do with Puma wholesale prices. Furthermore, Puma claims that Puerto Rico is a heavily regulated market that compels wholesalers, like Puma, to sell its branded fuel products to all Puma-branded franchisees (such as C-Fuels) at the same price. In 2016, for example, to avoid confusion, and to conform the language of its agreements to its operations, Puma changed the pricing terminology in its franchise agreements from "Lowest Rack Price" to DTW ("Dealer Tank Wagon"), the term and cost structure it actually uses. Puma also insists that the fuel products that it sells to wholesalers are different from those it sells to its branded franchisees and therefore its operations in the wholesale sector should remain outside of the scope of discovery.

Having summarized the parties' arguments, the Court moves to the heart of the matter. C-Fuels recognized in one of its motions that it is a retailer ultimately subject to a *different* price than that of a wholesaler. It nevertheless claims that its contractual price with Puma incorporates the price at which Puma sells gasoline/diesel at its "rack" (to wholesalers or other buyers who do not receive the fuel at their station as most retailers do). Puma denies that claim. In any case, C-Fuels has (or had) a retailer/franchisee relationship with Puma to operate five gas stations pursuant to already expired Franchise Agreements that were enacted between 2013 and 2014. The parties agree that C-Fuels is a franchisee/retailer, and *not* a wholesaler. In fact, C-Fuels concedes that, as a retailer, it is ultimately subject to a *different price* for fuel products than a *wholesaler*. In view of that, Puma's objection that C-Fuels' discovery requests into its wholesale operations and pricing structure are a "fishing expedition" might appear to be reasonable. More specifically, Puma argues that, as a retailer, C-Fuels should only gain access to sales and commercial data of other *retailers or franchisees* who are similarly situated to C-Fuels and not of wholesalers, who operate under a separate business segment.

By C-Fuels' own admission, it is *not* alleging that it should buy fuel at the same price as wholesalers, and C-Fuels also admits that it is *not* similarly situated to wholesalers. C-Fuels also advances that, "by definition, [its] price will always be higher than that of Puma's wholesalers since Puma adds the stipulated premium (of 8, 9 or 10 cents) to the price at which Puma sells fuel at its distribution rack." Based on those

admissions, the Court wonders whether the price that Puma ultimately offers to wholesalers and Puma's pricing operations for wholesalers are immaterial to C-Fuels' claims. The Court looked to the allegations in the complaint for guidance and they are indeed instructive. C-Fuels' breach of contract claim stems from the notion that Puma allegedly established an illegal scheme to circumvent the pricing provisions of the Franchise Agreements by overcharging C-Fuels for fuel purchased from Puma. Like Puma argues, the complaint makes no allegation of, nor reference to, Puma's wholesale prices.

Based on the aforementioned discussion, and because C-Fuels claims that Puma overcharged it in violation of the Franchise Agreements, the Court makes clear that first C-Fuels is entitled to conduct discovery on the contractual price structure specifically established under the Franchise Agreements. Information related to the pricing formula contractually agreed upon by the parties will necessarily be discoverable. There should be no dispute on that. Furthermore, because Puma expressly incorporated the term "Lowest Rack Price" in the Franchise Agreements as the starting point of C-Fuels' pricing formula, information related to the pricing components of the "Lowest Rack Price" under the Franchise Agreements is relevant and discoverable. That discoverable information includes, but is not limited to, *what* that base price is comprised of and *how* that price was calculated by Puma.

Furthermore, C-Fuels maintains that its breach of contract claim focuses on the specific pricing terms agreed to between itself and Puma—and the Court agrees— irrespective of the prices offered by Puma to *other* retailers or franchisees. If C-Fuels wishes not to conduct discovery on the prices offered to other retailers/franchisees that is its choice but, to be clear and to avoid further disputes, the Court would consider information concerning the prices that Puma sold its Puma branded products to other retailers/franchisees similarly situated to C-Fuels to be discoverable. The dispute between the parties, however, does not lie with similarly situated franchisees/retailers, but with discovery related to wholesalers.

The crux of the parties' disagreement therefore is over the relevancy of the pricing components offered by Puma to *wholesalers* in Puerto Rico. The Court agrees that Puma's pricing structure and/or pricing operations for *wholesalers,* at first blush, appears to be

beyond the scope of the allegations in the complaint. Further bolstering that position is C-Fuels' admission that it is in a different ballpark than wholesalers and its price for Puma products is naturally higher. Although discovery is broad, the Court is not convinced that extensive discovery on Puma's entire operations for wholesalers is necessary or appropriate. That said, however, one of C-Fuels' strongest claim is that the price which Puma and C-Fuels agreed to in the contracts for the sale and purchase of Puma branded fuel incorporates the price at which Puma sells gasoline/diesel at its "rack" to *wholesalers*, and not retailers. If indeed the price at which Puma sells gasoline/diesel at its "rack" to wholesalers is part of the term "Lowest Rack Price," as intended in the Franchise Agreements, then, the "rack prices" offered by Puma "at its rack" to other wholesalers (as opposed to retailers) become relevant and discoverable. Such information is relevant to the extent that it can assist the parties in determining whether Puma was honoring the contracts by selling its products to C-Fuels using their "actual" "*Lowest Rack Price*" as the base price.

The Court recognizes that Puma strongly affirms that its wholesale rack prices are *not* part of Puma and C-Fuels' pricing terms and that *wholesale* rack prices are different from, or not a part of, the "Lowest Rack Price" component of their agreement. But the Court cannot determine whether or not that representation is true at this juncture. So, Puma shall disclose, in broad terms—without revealing any trade secrets or proprietary information—the underlying pricing components used for wholesalers in Puerto Rico. The Court believes that by disclosing such information, the parties will be able to better navigate and streamline their arguments and discovery efforts. Perhaps it might even lead to the conclusion that such information, contrary to C-Fuels' belief, is not pertinent because it has nothing to do with the pricing terms agreed to in the Franchise Agreements. But for that to occur, the information must first be disclosed.

C-Fuels' request to compel this discovery is thus **GRANTED in part**, subject to the Court's findings. The Court further **ORDERS** the parties to meet and confer forthwith in order to reach an agreement in good faith to exchange the requested information, which shall be limited in scope to the Court's findings. All information disclosed should, of course, be limited to the relevant timeframe, which is unclear because

_____

C-Fuels omitted to mention in the complaint the specific dates when the alleged breach of contract occurred. Below, the Court will make a pronouncement on this matter.

On a final note, concerning Puma's objection on confidentiality grounds, Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify the specific legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

2.        *Interrogatory No. 9*

This interrogatory reads as follows: Identify all Puma individuals, or its affiliates, including its parent company executives, that participated in establishing and setting the prices of Puma gasoline and diesel products to *wholesalers* in PR. To avoid unnecessary repetition, the Court refers to its preceding discussion of interrogatory No. 8 and Puma's objections thereto. Again, one of C-Fuels' strongest claims is that the price which Puma and C-Fuels agreed to in the contracts for the sale and purchase of Puma branded fuel incorporates the price at which Puma sells gasoline/diesel at its "rack" to *wholesalers*. The Court recognizes that Puma strongly affirms that its wholesale rack prices are *not* part of Puma and C-Fuels' pricing terms and that *wholesale* rack prices are different from, or not a part of, the "Lowest Rack Price" component of their agreement. But the Court cannot determine whether or not that representation is true at this juncture.

That said, however, the Court notes that, notwithstanding its objections, Puma answered interrogatory No. 7, wherein it listed the names of the individuals that participated in establishing and setting Puma's "rack prices" in Puerto Rico. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided, which, at first blush, seems to satisfy the interrogatory. C-Fuels' request to compel this discovery is thus **DENIED**.

_____

3.    *Interrogatory No. 11*

This interrogatory reads as follows: Indicate whether Puma has made a similar "Lowest Rack Price" representation to other Puma franchisees or third parties. Identify each such franchisee or third party. Puma objected to this interrogatory claiming that the term "third party" is vague and the term "representation" is a mischaracterization of the language included in the franchise agreements. The Court agrees with Puma that the term "third parties" is perhaps vague and overly broad as it is not defined. Notwithstanding that, however, to the extent that the interrogatory is limited to Puma "franchisees," which are similarly situated to C-Fuels, then such information is indeed discoverable, and Puma shall disclose it.

The Court also notes that, notwithstanding Puma's objections to this interrogatory, it answered that "this nomenclature," presumably referring to the "Lowest Rack Price" term, was used on all Puma franchise retail agreements from around 2010 until 2016. Though Puma did raise objections to the interrogatory, the Court believes that its response sufficiently answers the first portion of the interrogatory. C-Fuels' request to compel this discovery is thus **GRANTED in part** and Puma shall supplement its answer to identify the franchisees that it referred to in its answer.

4.    *Interrogatory No. 13*

This interrogatory reads as follows: Indicate whether, aside from any proprietary additives, the gasoline sold by Puma to independent wholesalers is the same gasoline as sold to Puma franchisees. Puma objected to this interrogatory based on relevancy and further claims that the information requested constitutes a trade and business secret. Concerning the relevancy objection, in view of the allegations included in the complaint, the Court is not convinced that the information requested is relevant. In the complaint, C-Fuels claims that Puma allegedly breached the Franchise Agreements at issue by establishing an illegal scheme to circumvent the *pricing* provisions established therein and by *overcharging* C-Fuels for fuel purchased from Puma. The crux of C-Fuels claims, therefore, pertains to the *price* that Puma allegedly charging C-Fuels and not the *type* of fuel Puma sold to it or other entities. As such, the Court fails to see the relevancy of this request. Unless C-Fuels can muster a compelling argument otherwise, C-Fuels' request to compel this discovery is **DENIED**.

_____

As to Puma's objection on confidentiality grounds, Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

5.     *Interrogatory No. 16*

This interrogatory reads as follows:  Identify all rebates provided by Puma to its franchisees in Puerto Rico during the relevant timeframe. Puma objected to this interrogatory as irrelevant and overbroad. Nevertheless, Puma responded, without waiving its objections, that it had a sales program in place applicable and available to all retailers where a monthly volume target was calculated and communicated to each retailer. Puma further elaborated on that answer. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided, which, at first blush, seems to sufficiently satisfy the interrogatory. C-Fuels' request to compel this discovery is thus **DENIED**.

As to Puma's objection on confidentiality grounds, Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

On a final note, the Court finds that this interrogatory is properly limited in scope to Puma franchisees, like C-Fuels, and the information requested appears to be relevant to one of C-Fuels' theories of the case concerning rebates and discounts to other Puma franchisees. Whether that theory is ultimately successful remains to be seen and, of course, C-Fuels must prove it in due course. Discovery on this theory will be allowed but it will be limited in scope to the Court's findings in this Opinion. Once discovery is concluded, Puma is free to challenge C-Fuels' theory through a dispositive motion and is

free to argue any defense it deems appropriate, including the timeliness defense. The Court will not stay discovery on this matter.

6. *Interrogatory No. 18*

This interrogatory reads as follows: Identify all pricing/financial incentives or discounts provided by Puma to third parties outside of its franchise model in Puerto Rico during the relevant timeframe. Puma objects to this request "as drafted," for being too vague and overboard because the term "third parties" is not properly defined. Puma further argues that "third parties" could mean vendors, contractors, suppliers, amongst others, and the disclosure of all that information does not appear to be relevant to the case at bar. The Court agrees that the term "third parties" is too broad. Without waiving its objection, however, Puma answered that it did *not* provide any fuel pricing discount to its retailers, who are the similarly situated entities to C-Fuels. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided but with a more defined and narrowly tailored request. C-Fuels' request to compel this discovery, as drafted, is **DENIED**.

7. *Interrogatory No. 19*

This interrogatory reads as follows: Identify all rebates provided by Puma to third parties outside of its franchise model in Puerto Rico during the relevant timeframe. Puma objects to this request "as drafted," for being too vague and overboard. Puma further contends that to the extent the term "third parties" is not properly defined, C-Fuels is requesting the disclosure of all rebates it has made to vendors, contractors, suppliers, amongst others, which makes the request unduly burdensome. Puma also argues that the disclosure of all that information does not appear to be relevant to the case at bar and falls outside the scope of the allegations. Without waiving its objection, however, Puma answered that the rebate program referenced to in its response to interrogatory No. 16 applied only to Puma branded franchisees.

_____

The Court agrees with Puma that the term "third parties" is too broad and needs to be specifically defined. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided but with a more defined and narrowly tailored request. C-Fuels' request to compel this discovery, as drafted, is **DENIED**.

8.     *Interrogatory No. 20*

This interrogatory reads as follows: Identify all payments made by Puma to third parties *outside* of its franchise model in PR during the relevant timeframe. Puma objects to this request "as drafted," for being too vague and unduly burdensome. Puma further argues that to the extent the term "third parties" is not properly defined, C-Fuels is requesting to disclose all the payments it has made to vendors, contractors, suppliers, amongst others, which makes the request unduly burdensome, costly, unreasonable, and unlikely to lead to relevant evidence. Without waiving its objection, however, Puma answered that it pays myriad third parties including vendors, service providers, contractors, suppliers, utilities, etc. for different services performed, none of which are relevant to this case. The Court agrees with Puma's objections and further finds its response to be sufficient. C-Fuels' request to compel this discovery is thus **DENIED**. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided but with a more defined and narrowly tailored request.

b.     **Request for Production of Documents**

In addition to the challenged answers to interrogatories proffered by Puma, C-Fuels maintains that Puma also failed to comply with certain discovery requests related to various requests for production of documents (hereinafter "RFPD"), namely, Nos. 2, 3, 4, 7, 8, 9, 10, and 12. On one hand, C-Fuels argues that these RFPD's were not properly answered by Puma and asks the Court to compel Puma to answer them appropriately and provide the requested documentation. On the other hand, Puma maintains its objections to these discovery requests because it argues, in essence, that they are overly broad, irrelevant, unduly burdensome and/or request confidential information. The Court addresses each of C-Fuels' RFPD's and Puma's objections thereto.

_____

1.    <u>*RFPD No. 2*</u>

This RFPD reads as follows: Produce all documents evidencing discounts or rebates granted by Puma to all Puma franchisees in Puerto Rico and all Puma clients in Puerto Rico, including wholesalers buying gasoline products from Puma. Basically, Puma objects to this RFPD on relevancy grounds, for being unduly burdensome, and for requesting confidential or proprietary information. Beginning with Puma's objection on relevancy grounds, it claims that C-Fuels is seeking information that is outside the scope of the allegations in the complaint. The Court agrees with Puma in part.

To start, the Court finds no issue with the first part of the RFPD, namely, producing all documents evidencing discounts or rebates granted by Puma to its franchisees in Puerto Rico. C-Fuels' request appears to be relevant to one of C-Fuels' theories of recovery. And, C-Fuels is a franchisee so, naturally, information concerning discounts and rebates offered to C-Fuels vis-à-vis similarly situated franchisees may be relevant. The disclosure of such documentation, of course, will be limited to the relevant timeframe. C-Fuels' request to compel this limited part of the RFPD is **GRANTED**. In contrast, however, the Court finds that the same information pertaining to *all Puma clients* in Puerto Rico is overly broad, excessive, unreasonable and includes information that far exceeds the scope of discovery. Thus, C-Fuels' request to compel such part of the RFPD's is **DENIED** as drafted.

Puma also objects to this RFPD on relevancy grounds, arguing that the complaint makes no mention of the terms "rebates," "discounts," or "wholesaler(s)" and, therefore, information related to such terms is not likely to lead to any admissible evidence. On this matter, the Court disagrees. While it is true that C-Fuels' alternate theory of recovery based on the alleged financial incentives, rebates and discounts offered by Puma was not precisely spelled out in the complaint, Puma was nevertheless sufficiently notified of C-Fuels' breach of contract claims, namely, that Puma engaged in an illegal pricing scheme to circumvent the pricing terms and conditions of the Franchise Agreements. Given that the scope of discovery is broad, that the allegations in the complaint do not have to be spelled out in terms of crystal-clear precision, and that Puma will have a fair opportunity to challenge C-Fuels' theories of the case, discovery on this matter is fair game. Even assuming that Puma was unaware of the exact scope of C-Fuels' allegations upon reading

the complaint, it was adequately put on notice of C-Fuels' general breach of contract theory based on an unlawful pricing scheme. Both parties are entitled to full discovery and Puma will certainly have an opportunity to challenge C-Fuels' claims in due course. Discovery shall proceed uninterrupted and, contrary to Puma's suggestion, will not be halted.

Finally, as to Puma's objection on confidentiality grounds, Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

2.   *RFPD. No. 3*

This RFPD reads as follows: Produce all documents evidencing payments or electronic transfers of money from Puma to any Puma franchisee or any other Puma client in Puerto Rico, including wholesalers buying gasoline products from Puma. Puma objects to this RFPD, claiming that it seeks information that is irrelevant and falls outside the scope of the allegations in the complaint. Notwithstanding its objection, Puma answered that the only documents responsive to this request concern payments made by Puma as reimbursements on account of work performed or financed by its franchisees for maintenance and repairs of gas stations. Puma claims that these payments, however, are completely irrelevant and the burden and expenses of producing them further outweighs the likely benefits to C-Fuels. The Court agrees. C-Fuels' request to compel this discovery is **DENIED**.

3.   *RFPD No. 4*

This RFPD reads as follows: Produce all email communications or formal letters where Puma employees discuss pricing terms to be provided to (a) all Puma franchisees in Puerto Rico, and (b) all Puma clients in Puerto Rico, including wholesalers buying Puma gasoline products in Puerto Rico. Puma objects to this RFPD arguing that it is vague, broad, unduly burdensome and because the term "discuss pricing terms" may have different meanings. Puma further objects to this RFPD as irrelevant because it requests

information concerning pricing documents related to sales of fuel products to wholesalers and other customers that are *not* Puma branded retailers, like C-Fuels. According to Puma, those documents are not pertinent to the allegations in the complaint. Puma further objects to the extent that C-Fuels' request involves disclosure of trade secrets and confidential information. The Court agrees with Puma in part.

The Court has no fundamental issue with the first part of the RFPD to the extent that it requests documents discussing pricing terms to Puma franchisees in Puerto Rico, like C-Fuels. C-Fuels' request to compel this limited part of the RFPD is **GRANTED.** By contrast, however, the request of that documentation as to *all Puma clients* in Puerto Rico is overly broad, excessive, unreasonable and includes information that far exceeds the scope of the allegations. Thus, C-Fuels' request to compel this part of the RFPD's is **DENIED**, as drafted. Furthermore, concerning Puma's objection that the term "discuss pricing terms" is vague and may have different meanings, the Court agrees, and **ORDERS** the parties to meet and confer to try to reach an agreement in good faith as to the specific documents that C-Fuels is interested in.

Finally, as to Puma's objection on confidentiality grounds, Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

4.    *RFPD. No. 7*

This RFPD reads as follows: Produce suppliers' invoices of additives used by Puma during the relevant period. Puma objects to this request on relevancy grounds and claims that it requires the disclosure of trade secrets and confidential information. As to the relevancy objection, the Court believes that the requested documentation indeed appears to fall outside the scope of the allegations included in the complaint. In the complaint, C-Fuels claims that Puma allegedly breached the Franchise Agreements by creating an illegal scheme to circumvent the *pricing* provisions established therein and by *overcharging* C-Fuels for fuel purchased from Puma. The crux of C-Fuels' claims,

therefore, pertains to the *price* that Puma has allegedly been charging C-Fuels and *not* the *type* of fuel that Puma sold to it or to other suppliers. As such, the Court fails to see the relevancy of this request. Unless C-Fuels can muster a compelling argument otherwise, C-Fuels' request to compel this discovery is **DENIED**.

As to Puma's objection on confidentiality grounds, Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

5.   *RFPD No. 8*

This RFPD seeks additional documents over various subsections, such as, daily bills of landing, daily invoices, discounts, rebates, amongst others, concerning six specific Puma customers, "and any other Puma customer in Puerto Rico, other than a Puma branded dealer." Puma objects to this RFPD on various grounds, namely, for being impertinent, excessive, overly broad, unduly burdensome, falling beyond the scope of the allegations in the complaint, and for requesting documents involving proprietary and confidential information and trade secrets.

Given the allegations included in the complaint, in theory, C-Fuels should only gain access to sales and commercial data of other retailers or franchisees who are similarly situated to C-Fuels and not from wholesalers or other clients, who operate under a separate business segment. If, by C-Fuels' own admission, it is not alleging that it should buy fuel at the same price as wholesalers do, and is not similarly situated to wholesalers, then it can be argued that the price that Puma ultimately offers to wholesalers or other clients is not pertinent to C-Fuels claims. Given the limited allegations of the complaint, and the very large scope of documents requested, Puma's objection to RFPD No. 8 is neither improper nor misplaced. If C-Fuels insists on requesting this documentation, it shall re-issue its request in more precise and concise terms that are narrowly tailored to its breach of contract claim. *See* the Court's discussion of interrogatory No. 8 for guidance. C-Fuels' request to compel this discovery, as drafted, is **DENIED**. The parties are nevertheless **ORDERED** to meet and confer to try to reach

_____

an agreement in good faith as to the specific documents that C-Fuels is interested in receiving.

Puma is reminded that if it is going to raise objections claiming that the requested discovery contains confidential or protected information, Puma shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A).

6.      *RFPD No. 9*

This RFPD reads as follows: Produce a copy of monthly account statements, showing all credits and debits, all payments and check numbers, credits applied, and any adjustment made to the account balances of each of the customers listed in RFPD No. 8. Puma objects to this RFPD on the same grounds as it objected to RFPD No. 8. For the same reasons espoused in the discussion of RFPD No. 8, C-Fuels' request to compel this discovery, as drafted, is **DENIED** but the parties are **ORDERED** to meet and confer to try to reach an agreement in good faith as to the specific documents that C-Fuels is interested in.

7.      *RFPD No. 10*

This RFPD seeks additional documentation over various subsections concerning the clients listed in RFPD No. 8. Puma objects to this RFPD on the same grounds as it objected to RFPD No. 8. Puma also objects to this RFPD on the grounds that it does not request documentary evidence but rather information that should be requested through an interrogatory. Finally, Puma objects to this RFPD as overbroad to the extent that it seeks emails, documentation, and other documents "regarding pricing of gasoline products," which would entail hundreds of thousands of documents, which also adds to Puma's objection that it is overly broad.

For the same reasons espoused in the discussion of RFPD No. 8, C-Fuels' request to compel this discovery, as drafted, is **DENIED** but the parties are **ORDERED** to meet and confer to try to reach an agreement in good faith as to the specific documents that C-Fuels is interested in. C-Fuels is free to re-draft this request and narrowly tailor it to comply with the Court's findings. Furthermore, to the extent that this RFPD indeed

requires information that should be properly requested through an interrogatory, specifically subsections (g) through (j), C-Fuels is free to request this information through the proper channels.

### 8.   *RFPD No. 12*

This RFPD reads as follows: produce the rack prices and "Lowest Rack Price" provided to the customers listed in RFPD No. 8 during the relevant timeframe. Puma objects to this RFPD on the same grounds as it objected to RFPD No. 8. Puma also objects to this RFPD on the grounds that it does not request documentary evidence but rather information that should be requested through an interrogatory. Without waiving said objections, Puma refers C-Fuels to its answers to interrogatories Nos. 4 and 5. Such answer appears to be sufficient, at first blush. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information. Puma is also correct that the information requested in this RFPD should have been requested through an interrogatory and not RFPD. C-Fuels' request to compel this discovery is thus **DENIED**.

### c.   **Objections concerning the term "Lowest Rack Price"**

Puma objected to interrogatories Nos. 4, 5, 7, and 12, all of which request information related to the term "Lowest Rack Price." C-Fuels claims that Puma did not raise any of the permitted discovery objections to these interrogatories and should be compelled to answer them. The court addresses each in turn.

### 1.   *Interrogatory No. 4*

This interrogatory reads as follows: Identify all underlying cost structure components and/or variables comprising the "Lowest Rack Price" offered by Puma to C-Fuels, per Section 6.1.14 of their contractual agreements. Puma objected to this interrogatory claiming that C-Fuels is incorrectly characterizing the terms "Lowest Rack Price" by "presuming" that it entails "an underlying cost structure and/or variables." Without waiving such objection, Puma answered that although it used the term "Lowest Rack Price" in the Franchise Agreements, such term is not used by Puma to set prices on any of the business segments to which it commercializes products. Puma further responded that there are a number of factors that it uses to set the daily price for its Puma branded retailers, also known in Puma's operations as the "Dealer Tank Wagon"

_____

("DTW"). Puma further attested that, pursuant to Puerto Rico law, its DTW is the same
for all Puma branded retailers and is notified to DACO the day before it comes into effect.
Puma also answered that among the main factors considered for setting prices are the
market conditions. Puma then proceeded to list various other factors it considers in
setting its price.

     After reviewing Puma's answer to interrogatory No. 4, the Court understands that
it sufficiently responds to the request. Furthermore, the Court understands that Puma
expanded on that precise information in the answer to interrogatory No. 7, wherein Puma
listed the names of the individuals that participated in establishing and setting Puma's
rack prices in Puerto Rico. As such, C-Fuels' request to compel this discovery is **DENIED**.
If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma
to try to reach an agreement in good faith as to supplementing the information provided.
With that said, the Court feels compelled to note that C-Fuels cannot object to Puma's
answers as nonresponsive nor can it keep pressing for the same request when a sufficient
answer was provided, simply because C-Fuels does not like Puma's response. C-Fuels is
always free to conduct further discovery on any controverted matter through the proper
channels, like, reasonably meeting and conferring with the other party, requesting for
supplementation, further discovery requests or depositions.

     Additionally, and to further assist the parties, the Court notes that C-Fuels
clarified that all it seeks with these interrogatories are the elements or components used
by Puma to determine from time to time its "Lowest Rack Price" and the names of the
individuals participating in such pricing decisions. That information is indeed
discoverable. C-Fuels further clarified that it was not seeking information about the *other*
factors Puma takes into consideration to establish the daily prices for its retailers.

     The Court reiterates that C-Fuels is entitled to conduct discovery on the
contractual price structure and formula specifically established under the Franchise
Agreements. Furthermore, because Puma expressly incorporated the term "Lowest Rack
Price" in the Franchise Agreements as the starting point of C-Fuels' pricing formula,
information related to the pricing components of the "Lowest Rack Price" is relevant and
discoverable. The parties are fighting tooth and nail over the term "Lowest Rack Price"
and they are on opposite ends of the spectrum with no end in sight. But the parties appear

to be talking over each other and making a huge fuss over the *terminology* used to describe the pricing structure they contractually agreed on. Whatever each side wants to call the *base price,* which is the key here, be it "Lowest Rack Price," "DTW," or something else, the name is *not* dispositive. The key is *not* the "term" itself but its *meaning*. The relevant inquiry should be on *what* information Puma used to determine the base price, what the base price is comprised of, and how that price was calculated by Puma. The Court refers the parties to its discussion of interrogatory No. 8 for further guidance.

To wrap it up, the main inquiry is whether the price that Puma used to sell its branded products to C-Fuels during the relevant timeframe complies with the pricing terms of the Franchise Agreements. If it complies, there is no breach of contract. If the price did not comply with the express terms of the Franchise Agreements, then C-Fuels has a plausible breach of contract claim. The parties are beating a dead horse over semantics and the Court **ORDERS** them to meet, confer, and resolve this discovery issue forthwith.

2.    *Interrogatory No. 5*

This interrogatory reads as follows: Identify all underlying cost structure components and/or variables comprising the "premium" to be paid by C-Fuels to Puma over its "Lowest Rack Price" for regular and premium gasoline and diesel per Section 6.1.14 of the agreement between the parties. Puma objected to this interrogatory on the same grounds that it objected to interrogatory No. 4. Notwithstanding its objection, Puma issued a response to interrogatory No. 5, which, at first blush, appears to be satisfy this request. C-Fuels' request to compel this discovery is thus **DENIED**. If C-Fuels is not satisfied with the answer provided, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided. The Court also incorporates by reference its discussion of interrogatory No. 4.

_____

3.      *Interrogatory No. 7*

This interrogatory reads as follows: Identify the names of all Puma individuals/employees or its affiliates, including its parent company executives, that participated in establishing and setting Puma's rack prices in Puerto Rico. Puma objected to this interrogatory as drafted but, without waiving its objection, Puma disclosed three names of individuals that participate in setting the DTW price that Puma sells fuel products to its Puma branded retailers. Puma also referred C-Fuels to its answer to interrogatory No. 1. Puma's responses appear to be sufficient and thus C-Fuels' request to compel this discovery is **DENIED**. If C-Fuels is not satisfied with the answer provided by Puma, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided.

4.      *Interrogatory No. 12*

This interrogatory reads as follows: Aside from the proprietary additives used under the Puma and Texaco brands sold by Puma, indicate whether the gasoline sold by Puma to Texaco and the same Puma franchisees is the same gasoline. Puma did not object to this interrogatory and answered that it creates the different products that it sells by combining fungible unfinished gasolines that are distinguished by octane value, including 93 octane gasoline that is used exclusively for Puma branded service stations, with proprietary additives. Puma further elaborated on its answer. Notwithstanding, in its motion to compel, C-Fuels challenged Puma's response and argued that Puma did not raise a permissible objection. After reviewing Puma's response, the Court notes that Puma did *not* raise an objection to this interrogatory and, in contrast, provided a detailed response that appears to be sufficient. C-Fuels' request to compel this discovery is thus **DENIED**. If C-Fuels is not satisfied with Puma's answer, it shall meet and confer with Puma to try to reach an agreement in good faith as to supplementing the information provided, which, at first blush, seems to satisfy the interrogatory.

d.      **Final pronouncements**

To conclude, and in hopes of further assisting the parties in their discovery efforts, the Court makes the following pronouncements. First, considering that "[t]he complaint [. . .] is devoid of factual allegations which would allow this Court to ascertain the dates when Puma purportedly breached the contractual provisions . . ." (Docket No. 33 at 8),

C-Fuels is **ORDERED** to clarify to Puma and to the Court through an Informative Motion the exact dates when the alleged breach of contract began and concluded. C-Fuels shall file the motion **within the next five (5) days.** The Court understands that the Franchise Agreements at issue were executed between 2013 and 2014, and therefore, the scope of C-Fuels' claims, as well ass the scope of discovery, should be limited to the timeframe the agreements were in full force and effect. Nothing predating or postdating the Franchise Agreements should be pertinent.

Second, Puma has raised several objections to discovery requests on the grounds that it seeks confidential and proprietary information and/or trade secrets. Puma further observes that it has legitimate concerns that some of the information requested could be leaked to third parties, including to "a corporation related to C-Fuels, Toral," which is a wholesaler competing against Puma in a separate market segment and which Puma claims is a company owned and operated by related family members of C-Fuels. (*See* Docket No. 39 at 9). The Court understands Puma's concern, which should not be taken lightly. Notwithstanding that, however, if Puma has a specific objection to certain discovery requests it shall identify with specificity the legal protection it invokes and satisfy the pertinent and strict requirements for invoking a trade secrets protection. Puma shall also specifically "describe the nature of the documents, communications or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). The Court also notes that Puma's concerns may be appeased by a confidentiality agreement or a protective order.

Third, C-Fuels observed that it is willing to narrow the scope of several of its discovery requests and that the parties are working to agree on relevant search terms for electronically stored information. The parties are commended on such efforts, which shall continue to the best of their abilities, and are **ORDERED** to meet and confer to reach an agreement on this matter.

_____

Finally, the undersigned strongly urges the parties to use their best professional judgment and abilities to reach an agreement in good faith on the pending discovery matters and resolve **all** ensuing discovery issues, if any at all, without further intervention from the Court for judicial economy. The parties are **ORDERED** to meet and confer within the next fourteen days, by December 27, 2021, to settle their differences with the challenged discovery requests.

   **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of December 2021.

                                                      _____
                                                      MARSHAL D. MORGAN
                                                      United States Magistrate Judge